1  JEFFER MANGELS BUTLER & MITCHELL LLP
   STANLEY M. GIBSON (Bar No. 162329)
2  *sgibson@jmbm.com*
   REX HWANG (Bar No. 221079)
3  *rhwang@jmbm.com*
   LAUREN BABST (Bar No. 313156)
4  *lbabst@jmbm.com*
   1900 Avenue of the Stars, 7th Floor
5  Los Angeles, California 90067-4308
   Telephone:  (310) 203-8080
6  Facsimile:  (310) 203-0567

7  Attorneys for Plaintiff Metal Jeans, Inc.

8

9                **UNITED STATES DISTRICT COURT**

10               **CENTRAL DISTRICT OF CALIFORNIA**

11

12  METAL JEANS, INC., a Nevada       Case No. 2:15-cv-08987-DDP-RAOx
    corporation,
13                                    The Hon. Dean D. Pregerson
              Plaintiff,
14                                    **PLAINTIFF METAL JEANS, INC.'S**
         v.                           **PRELIMINARY OPPOSITION TO**
15                                    **DEFENDANT METAL SPORT**
    ANO VELI SAMUEL TURTIAINEN        **INC.'S MOTION FOR**
16  and METAL SPORT, INC.,            **ATTORNEYS' FEES AND NON-**
                                      **TAXABLE COSTS**
17            Defendants.
                                      Date:   December 23, 2019
18                                    Time:   10:00 a.m.
                                      Ctrm:   9C, 9th Floor
19

20

21

22

23

24

25

26

27

28

67528607v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     LEGAL STANDARD ............................................................................... 2

III.    ARGUMENT ........................................................................................... 3

    A.     The Court Should Defer Briefing and Consideration Of
        Defendant's Motion Until The Appeal Has Concluded. ........................ 3

    B.     Defendant's Motion Should Be Denied As Untimely. ............................ 5

    C.     Defendant Has Failed To Show That This Is An Exceptional
        Case. ...................................................................................................... 6

        1.     Plaintiff's Procurement Of Its Trademark Rights At Issue
               In This Case Was Not Exceptional. ............................................... 6

        2.     Plaintiff's Representations To The Public Were Not
               Exceptional. ................................................................................. 10

        3.     Plaintiff's Litigation Conduct Was Not Exceptional. ................ 12

               a.     Plaintiff Has Been Sufficiently Sanctioned For Its
                    Litigation Conduct, And No Additional Fee Award
                    Is Necessary. .................................................................. 12

               b.     Other Litigation Conduct Highlighted By Defendant
                    Is Not Exceptional. ....................................................... 12

    D.     Awarding Attorneys' Fees Is Not Necessary To Deter Conduct
        Or To Compensate Defendant ............................................................. 15

    E.     Defendant's Fee Request Is Unreasonable ......................................... 15

IV.     CONCLUSION ..................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applied Info. Sciences Corp. v. eBay, Inc.*,
  511 F.3d 966 (9th Cir. 2007) .................................................................... 3

*Beckman Instruments, Inc. v. LKB Produkter AB*,
  892 F.2d 1547 (Fed. Cir. 1989) .............................................................. 18

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986) ................................................................ 15

*Codex Corp. v. Milgo Elec. Corp.*,
  541 F. Supp. 1198 (D. Mass. 1982) ........................................................ 17

*Digeo, Inc. v. Audible, Inc.*,
  505 F.3d 1362 (Fed. Cir. 2007) ............................................................ 8, 9

*FDIC v. Maxxam, Inc.*,
  523 F.3d 566 (5th Cir. 2008) ................................................................ 7, 8

*FlowRider Surf, Ltd. v. Pacific Surf Designs, Inc.*,
  No. 315CV01879BENBLM, 2018 WL 6830611
  (S.D. Cal., Dec. 21, 2018) ................................................................... 5, 6

*G.P.P., Inc. v. Guardian Protection Products, Inc.*,
  No. 1:15-CV-00321-SKO, 2018 WL 932087
  (E.D. Cal., Feb. 16, 2018) ....................................................................... 5

*Guatay Christian Fellowship v. Cnty. of San Diego*,
  670 F.3d 957 (9th Cir. 2011) .................................................................... 3

*Hannon v. Sec. Nat. Bank*,
  537 F.2d 327 (9th Cir. 1976) .................................................................... 2

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .......................................................................... 16, 17

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  687 F.3d 1300 (Fed. Cir. 2012), vacated on other grounds,
  134 S.Ct. 1744 (2014) ........................................................................... 7, 8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
 572 U.S. 545 (2014) ...................................................................................... 2, 3, 7

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
 793 F.2d 1132 (9th Cir. 1986) ............................................................................ 3

*In re Protegrity Corp.*,
 2017 WL 747329 (N.D. Cal. Feb. 27, 2017).................................................... 14

*Riley v. Kennedy*,
 553 U.S. 406 (2008) ............................................................................................ 5

*Rolex Watch, U.S.A., Inc. v. Michel Co.*,
 179 F.3d 704 (9th Cir. 1999) .............................................................................. 3

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*
 707 F. Supp. 2d 737 (N.D. Ohio 2010) ............................................................ 17

*Sam Francis Foundation v. Christies, Inc.*,
 No. CV118605MWFFFMX, 2012 WL 12887639
 (C.D. Cal., Nov. 6, 2012) ................................................................................... 4

*Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*,
 2010 WL 8500520 (N.D. Cal. Sept. 20, 2010)................................................. 13

*Schrupp v. Wells Fargo Bank, N.A.*,
 No. CV 2:16-636 WBS KJN, 2018 WL 3135965
 (E.D. Cal., June 20, 2018) .................................................................................. 5

*Secalt S.A. v. Wuxi Shenxi Constr. Machinery Co., Ltd.*,
 668 F.3d 677 (9th Cir. 2012) ............................................................................ 13

*Selectron Indus. Co. v. Selectron Int'l*,
 2007 WL 5193735 (C.D. Cal. Sept. 25, 2007).................................................. 17

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
 839 F.3d 1179 (9th Cir. 2016) (en banc) ............................................................ 2

*Watts v. United States*,
 1993 U.S. App. LEXIS 24955 (9th Cir. 1993)................................................. 17

*Wi-Lan Inc. v. Vizio, Inc.*,
 Case No. 1:15-cv-00788-LPS, U.S. District Court for the District of
 Delaware (Wilmington), Dkt. 462 (October 23, 2019 Order)............................. 4

JMBM | Jeffer Mangels Butler & Mitchell LLP

**Statutes**

15 U.S.C.
   § 1117(a) ..................................................................................................... 2, 7

35 U.S.C.
   § 285 ........................................................................................................ 2, 7, 8

U.S. Code
   § 1291 ............................................................................................................ 5

**Other Authorities**

Fed. R. Civ. P. 54 .................................................................................................. 4

Fed. R. Civ. P. 58 .................................................................................................. 4

Local Rule 54-7 ................................................................................................. 5, 6

JMBM | Jeffer Mangels
       Butler & Mitchell LLP

# I.     **INTRODUCTION**

Plaintiff Metal Jeans, Inc. ("Plaintiff") respectfully submits this Preliminary Opposition in response to Defendant Metal Sport, Inc.'s ("Defendant") Motion for Attorneys' Fees and Non-Taxable Costs (Dkt. 208) ("Motion").  This Opposition is preliminary because on November 26, 2019, the parties submitted a Joint Stipulation and Proposed Order to continue the Motion hearing date to February 24, 2020, and set a briefing schedule such that Plaintiff's Opposition would be due January 13, 2020, and Defendant's Reply due February 10, 2020 (Dkt. 213).  The Court has not yet acted upon the Joint Stipulation and Proposed Order.  As such, Plaintiff submits this preliminary Opposition to preserve its rights, and intends to submit a comprehensive Opposition on January 13, 2020 if the Court agrees to the parties' proposed hearing date and briefing schedule.

With that said, Plaintiff has also submitted an ex parte application on December 2, 2019 requesting that all briefing and consideration of Defendant's Motion be deferred until Plaintiff's appeal has concluded (Dkt. 214).  As set forth in Plaintiff's ex parte application, the Ninth Circuit's decision could render any briefing or consideration of Defendant's Motion moot, and therefore the Court should exercise its discretion to stay briefing and consideration of the Motion for the duration of the appeal, or dismiss the Motion without prejudice to Defendant renewing it after the appeal has concluded.  Plaintiff reserves the right to contest whether the case is exceptional in the event that the Ninth Circuit does not affirm the Court's ruling on the parties' cross-motions for summary judgment.

If the Court is inclined to rule now, Defendant's Motion should be denied. The Court should exercise its discretion to deny fees because this case is not exceptional.  In particular, Plaintiff did not procure the METAL mark through fraud as argued by Defendant, and Plaintiff's litigation conduct did not stand out from other lawsuits as to justify a fee award.  If the Court grants fees, it should exercise its discretion to reduce Defendant's award from the amount sought.

## II.   **LEGAL STANDARD**

"The general American rule is that the prevailing party may not recover attorney's fees absent express provision of a contract or statute or exceptional circumstances warranting the exercise of equitable powers." *Hannon v. Sec. Nat. Bank*, 537 F.2d 327, 328 (9th Cir. 1976). The Lanham Act provides that "in exceptional cases," the Court may award "reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

The Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545 (2014) clarified how to analyze fee requests under the Patent Act (35 U.S.C. § 285), and the Patent Act's fee-shifting provision is identical to that of the Lanham Act (15 U.S.C. § 1117(a)). *SunEarth, Inc. v. Sun Earth Solar Power Co*., 839 F.3d 1179, 1180 (9th Cir. 2016) (en banc). As such, the Ninth Circuit has adopted the *Octane Fitness* analysis for interpreting fee requests under the Lanham Act. *SunEarth, Inc., supra,* 839 F.3d at 1180-81.

Under *Octane Fitness*, a case is "exceptional" if it "stands out from others with respect to substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, supra,* 572 U.S. at 554. Courts should look at the "totality of the circumstances" on a case-by-case basis, exercising discretion to determine whether a case is exceptional. *SunEarth, Inc., supra,* 839 F.3d at 1180 (citing *Octane Fitness, LLC, supra,* 572 U.S. at 554). There is no "precise rule or formula" in this context; however, *Octane Fitness* refers to a list of "nonexclusive" factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *SunEarth, Inc., supra,* 839 F.3d at 1181 (citing *Octane Fitness, LLC, supra,* 572 U.S. at 554 n.6).

It is "the rare case in which a party's unreasonable conduct – while not necessarily independently sanctionable – is nonetheless so 'exceptional' as to justify

JMBM | Jeffer Mangels
Butler & Mitchell LLP

an award of fees." *Octane Fitness, LLC, supra,* 572 U.S. at 555. "[A]wards are never automatic and may be limited by equitable considerations." *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 711 (9th Cir. 1999) (internal quotes and citations omitted); *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1134 (9th Cir. 1986) (noting that under the Lanham Act, while courts "may" award fees in exceptional cases, the Act does not require them).

The party seeking fees bears the burden by a preponderance of the evidence to demonstrate that a case is exceptional. *Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 973 (9th Cir. 2007) (affirming denial of fees where there was not "compelling proof").

## III.   <u>ARGUMENT</u>

### A.   The Court Should Defer Briefing and Consideration Of Defendant's Motion Until The Appeal Has Concluded

On August 6, 2019, Plaintiff filed a Notice of Appeal of this Court's July 9, 2019 Order granting summary judgment in favor of Defendant based on the doctrine of unclean hands (Dkt. 193). Dkt. 197. Defendant filed its Motion on November 25, 2019 (Dkt. 208), three and a half months after the appellate proceedings began. Defendant's Motion is premised on the District Court's findings of unclean hands in its summary judgment Order (Dkt. 193). *See* Motion (Dkt. 208) at pp. 4-6,11-13,17-18. Plaintiff specifically challenges the same ruling on appeal, and therefore the findings providing the basis for Defendant's Motion are currently subject to the Ninth Circuit's *de novo* review. *See* Dkt. 197; *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 970 (9th Cir. 2011) (*de novo* standard of review applies to summary judgment orders). As such, the outcome of the appeal affects whether Defendant is entitled to seek fees. If the Ninth Circuit vacates the District Court's Order, Defendant would no longer be a "prevailing party" and no longer be entitled to seek recovery of its fees. Alternatively, even if the summary judgment order is not vacated, the Ninth Circuit may make determinations that impact the arguments

1   raised in Defendant's Motion, including whether this case "stands out" from other

2   cases as exceptional.

3       As such, Plaintiff respectfully requests the Court stay all briefing and

4   consideration of Defendant's Motion for the duration of the appeal; or, in the

5   alternative, Plaintiff requests the Court deny the Motion without prejudice to

6   Defendant renewing said Motion following conclusion of the appeal.  Plaintiff has

7   requested this relief in its ex parte application filed on December 2, 2019.  Dkt. 214.

8       This Court has substantial flexibility when it comes to deciding Defendant's

9   Motion, as the Federal Rules of Civil Procedure permit the Court to defer

10  consideration of all issues related to fees until Plaintiff's appeal has concluded: "If

11  an appeal on the merits of the case is taken, the court may rule on the claim for fees,

12  may defer its ruling on the motion, or may deny the motion without prejudice,

13  directing . . . a new period for filing after the appeal has been resolved."  Fed. R.

14  Civ. P. 54 advisory committee's note to 1993 amendment; *see also* Fed. R. Civ. P.

15  58 advisory committee note ("<u>Particularly if the claim for fees involves substantial</u>

16  <u>issues or is likely to be affected by the appellate decision</u>, the district court may

17  prefer to defer consideration of the claim for fees until after the appeal is resolved.")

18  (emphasis added).  A Delaware District Court recently deferred briefing and

19  decision on a fee motion by denying a party's fee motion without prejudice to the

20  party renewing said motion following conclusion of the appeal.  *See Wi-Lan Inc. v.*

21  *VIZIO, Inc.*, Case No. 1:15-cv-00788-LPS, U.S. District Court for the District of

22  Delaware (Wilmington), Dkt. 462.[1]  District Courts in the Ninth Circuit have also

23  routinely deferred ruling on fee motions pending resolution of an appeal.  *See, e.g.*,

24  *Sam Francis Foundation v. Christies, Inc.*, No. CV118605MWFFFMX, 2012 WL

25  12887639, at *2 (C.D. Cal., Nov. 6, 2012) (denying fee motion without prejudice

26

27  _____

28  [1] The Delaware Court's Oral Order dated October 23, 2019 is shown on the Court Docket which is attached as Exh. B to Babst Decl. in support of Plaintiff's Ex Parte Application to Defer Briefing and Consideration of the Fee Motion, *See* Dkt. 214-1.

Jeffer Mangels
Butler & Mitchell LLP

JMBM

and inviting party to renew its motion following resolution of the appeal, stating "[t]he Federal Rules allow the Court to defer ruling on such a motion where, as here, judicial economy and general principles of efficiency are better served by a decision following the conclusion of the underlying appeal."); *G.P.P., Inc. v. Guardian Protection Products, Inc.*, No. 1:15-CV-00321-SKO, 2018 WL 932087, at *2 (E.D. Cal., Feb. 16, 2018) (staying and holding in abeyance the parties' respective fee motions and bills of costs pending resolution of appeal); *Schrupp v. Wells Fargo Bank, N.A.*, No. CV 2:16-636 WBS KJN, 2018 WL 3135965, at *1 (E.D. Cal., June 20, 2018) (staying fee motion pending resolution of the appeal); *FlowRider Surf, Ltd. v. Pacific Surf Designs, Inc.*, No. 315CV01879BENBLM, 2018 WL 6830611, at *3 (S.D. Cal., Dec. 21, 2018) (dismissing without prejudice a fee motion and inviting party to renew its fee motion after the appeal has concluded; stating "[d]ismissal allows the parties an opportunity to argue the merits of the motion in light of the appellate disposition, should [party] choose to renew its motion.").

As such, the briefing and consideration of the Motion should be stayed until the Ninth Circuit appeal has concluded. Deferring consideration of fees until after the appeal is the best course of action, as it would spare the parties and the Court considerable effort in the event that the Court's ruling on unclean hands is not affirmed by the Ninth Circuit.

**B.     Defendant's Motion Should Be Denied As Untimely**

The Court's Order on the Cross-Motions for Summary Judgment (Dkt. 193) ("MSJ Order") was issued on July 9, 2019. The MSJ Order disposed of all the claims in the case and meets the criteria of a "final judgment" under 28 U.S. Code § 1291. *See Riley v. Kennedy*, 553 U.S. 406, 419 (2008) ("A final judgment is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."). Accordingly, the deadline to file Defendant's motion for attorneys' fees was July 23, 2019. *See* Local Rule 54-7 (requiring a motion for fees to be filed and served within 14 days after the entry of judgment *or other final*

1   *order*, unless otherwise ordered by the court) (emphasis added).  Defendant,

2   however, waited until November 25, 2019 to file its fee motion.  Defendant's

3   motion is therefore untimely, and this Motion should be denied in its entirety as a

4   result.[2]

### C.   Defendant Has Failed To Show That This Is An Exceptional Case

#### 1.   Plaintiff's Procurement Of Its Trademark Rights At Issue In This Case Was Not Exceptional

Defendant argues that this is an exceptional case because Plaintiff allegedly

procured its trademark rights at issue in this case through fraud.[3]  Defendant points

to the following in support of its argument: (1) Plaintiff's first trademark registration

for the METAL mark (the "572 Registration") was cancelled because it falsely

included boots as covered goods; (2) the first use dates in its trademark registration

at issue in this case (the "652 Registration") differ from first use dates submitted to

the USPTO in connection with another unrelated trademark registration; (3)

Plaintiff's owner ("Topolewski") purportedly made false statements to the USPTO

regarding how Plaintiff promoted itself as a "premium denim lifestyle clothing

brand" during prosecution of the 652 Registration; and (4) Plaintiff made

inconsistent statements regarding how it acquired its trademark rights.  Defendant's

arguments are meritless in the context of this Motion.

*First*, Plaintiff's actions with respect to the 572 Registration should not be

---

[2] On November 21, 2019, Defendant filed its Proposed Judgment with the Court. Dkt. 203.  Plaintiff objected to that filing the next day.  Dkt. 204.  On November 25, 2019, the Court filed its formal Judgment in this matter.  Dkt. 205.  Plaintiff maintains that Defendant's Motion is untimely pursuant to Local Rule 54-7 despite these recent filings.

[3] In its Summary Judgment Order, the Court granted Defendant's motion for summary judgment "on the ground that Plaintiff comes before this court with unclean hands." Dkt. 193 at pp. 16-17. The Court also made several findings of fact in reaching that conclusion.  *Id.* at pp. 7-17.  Plaintiff has appealed the Court's Summary Judgment Order to the Ninth Circuit.  Accordingly, Plaintiff respectfully presents certain arguments that may be contrary to the Court's findings in this Opposition based on the understanding that some or all of the Court's findings may be reversed on appeal.

JMBM | Jeffer Mangels Butler & Mitchell LLP

considered with respect to this Motion because that mark is simply not the trademark at issue in this case.  Fee awards under § 1117(a) focus on the harm to the prevailing party, not on penalizing the wrongdoer.  *Octane Fitness*, 572 U.S. at 548-49.  Accordingly, courts generally only sanction conduct that occurred outside of the pending litigation if a party engaged in bad-faith conduct *in direct defiance of the sanctioning court.  See Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc*., 687 F.3d 1300, 1318-19 (Fed. Cir. 2012), vacated on other grounds, 134 S.Ct. 1744 (2014) (holding that the district court erred in finding the case exceptional under § 285 based on representations made before a different tribunal) (emphasis added); *FDIC v. Maxxam, Inc*., 523 F.3d 566, 591 (5th Cir. 2008) (holding that a court generally should sanction "conduct beyond that occurring in trial [only] when a party engages in bad-faith conduct which is in direct defiance *of the sanctioning court*.") (emphasis in the original).

Here, the 572 Registration is irrelevant to Plaintiff's claims, which are based on the 652 Registration.  Plaintiff has taken no actions with regard to the 572 Registration that were in direct defiance of this Court, as the Court has issued no Orders in this matter with respect to the 572 Registration.  Moreover, Defendant failed to satisfy its burden to establish that Plaintiff's actions with respect to the 572 Registration actually harmed Defendant in any way.  Accordingly, Plaintiff's actions with respect to the 572 Registration should not be considered with respect to this fee motion. *Cf. Maxxam*, 523 F.3d at 593 ("To the extent that the FDIC engaged in underlying conduct that the district court found distasteful . . . it is not within the court's power to sanction such conduct.").

Moreover, even if the 572 Registration is considered as a part of this Motion, Topolewski's conduct relating to that registration was not exceptional.  It is undisputed that the 572 Registration rightfully identified jeans and shirts as goods covered by the mark.  The inclusion of "boots" as covered goods was a mistake, as was Topolewski's decision to sign an affidavit repeating that mistake.  However,

Defendant failed to present any evidence demonstrating that Topolewski's actions were made with any bad intent, and certainly could have been the result of mere inadvertence. *See Digeo, Inc. v. Audible, Inc*., 505 F.3d 1362, 1369 (Fed. Cir. 2007) ("Merely negligent conduct does not suffice to establish that a case is exceptional."). Thus, based on this record, it would be inappropriate to conclude that Defendant has satisfied its burden of demonstrating that Topolewski's actions were exceptional.

*Second*, the dates of first use submitted as a part of the 652 Registration differ from dates included in a 2007 Interrogatory Response made in connection with the USPTO proceedings involving a separate trademark, the 572 Registration. *Compare* Dkt. 145, Marcus Decl. Exh. 6 (652 Registration Application) *with* Exh. 20 (2007 Interrogatory Responses re 572 Registration). Based on this discrepancy, Defendant assumes that the 652 Registration includes false information. However, Defendant failed to present any evidence to substantiate this assumption. Indeed, Plaintiff's representations about the relevant first use dates for the 652 Registration have been consistent except for one interrogatory response from 2007. *See, e.g*., Dkt. 145, Marcus Decl. Exh. 5 (11/19/18 Topolewski Dep. at p. 279:3-10) and Exh. 6 (652 Registration Application) (each confirming the first use in commerce of the Metal mark on jeans and shirts was June 20, 1990). Thus, it is entirely possible that the 2007 Interrogatory Response, and not the 652 Registration Application, includes incorrect dates. The 2007 Interrogatory Response was submitted in an unrelated proceeding and was not made in defiance of this Court. Accordingly, Defendant should not be permitted to use conduct from another unrelated proceeding about a separate trademark, which it was not harmed by, to argue that the instant case was exceptional. *Highmark, supra,* 687 F.3d at 1318-19 (holding that the district court erred in finding the case exceptional under § 285 based on representations made before a different tribunal)(emphasis added); *FDIC*, *supra,* 523 F.3d at 591 (holding that a court generally should sanction "conduct beyond that occurring in trial [only] when a party engages in bad-faith conduct which is in direct defiance *of the*

1   *sanctioning court*.") (emphasis in original).

2       Moreover, even if the 2007 Interrogatory Response is considered, the fact that

3   it included some inconsistent dates from the 652 Registration is not exceptional.

4   Defendant failed to present any evidence demonstrating that the responses in the

5   2007 Interrogatory Response were made with any bad intent, and could have been

6   the result of mere inadvertence (or even typographical errors). *Digeo,* 505 F.3d at

7   1369.  This is especially true since the 2007 Interrogatory Response asks about

8   events that occurred in the 1990s where remaining records may be limited.  Thus,

9   based on this record, it would be inappropriate to conclude that Defendant has

10  satisfied its burden of demonstrating that the discrepancy with respect to first use

11  dates was exceptional.

12      *Third*, Defendant argues that Plaintiff's statement to the USPTO that it

13  promoted itself as a "premium denim lifestyle clothing brand" was false based on

14  deposition testimony from Topolewski.  However, that argument mischaracterizes

15  Topolewski's complete testimony.  At his deposition, Topolewski explained that the

16  "premium denim lifestyle clothing" makes up only a portion of Plaintiff's sales.

17  Specifically, Counsel pointed to the representation in the 2010 brief submitted to the

18  USPTO and asked: "Is that accurate?"  In response, Topolewski stated: "That's very

19  limited what we have been selling [*sic*]; so no, it's not accurate." Dkt. 145, Marcus

20  Decl. Exh. 1 (9/27/18 Topolewski Dep. at p. 206:6-13).  The full response shows

21  ambiguity as to whether Topolewski was saying the statement was inaccurate to an

22  extent, or completely inaccurate, and there is ambiguity as to if he is referring to the

23  accuracy of the statement *when made* or as it relates to Plaintiff's current marketing

24  scheme.  The inference that the statement refers only to the expansion of Plaintiff's

25  current marketing is supported by Topolewski's testimony that the Metal brand also

26  targets consumers interested in a brand that represents strength, toughness, and

27  sportiness.  Dkt. 157, Adli Decl. Exh. 2 (Response to Interrogatory No. 9).

28  Accordingly, there are, at a minimum, competing inferences to be drawn from

JMBM | Jeffer Mangels Butler & Mitchell LLP

Topolewski's deposition testimony, and it would be unreasonable to characterize this as exceptional conduct sufficient to award fees in this case.

*Fourth*, Defendant argues that Plaintiff's alleged "inconsistent positions" on how Plaintiff acquired the METAL mark further bolsters the exceptionality of Plaintiff's conduct. It does not. Topolewski America, Inc. and Plaintiff are both owned by Topolewski. Given the common ownership and close relationship between the entities involved, it is possible that Topolewski – who is not an attorney – believed that he could (and did) assign trademark rights from Topolewski America, Inc. to Plaintiff without the assignment being in writing. While that belief may be incorrect as a matter of law, that does not mean that Topolewski deliberately intended to deceive when he testified at his deposition that an assignment had occurred. The fact that a lay person provided an incorrect legal conclusion at a deposition is understandable, and therefore not exceptional.

Overall, Defendant cannot show that Plaintiff procured the trademark rights at issue in this case through fraud, and therefore falls far short of demonstrating that Plaintiff's conduct was exceptional.

### 2. Plaintiff's Representations To The Public Were Not Exceptional

Defendant also argues that Plaintiff deceived consumers about its products and trademarks, which was sufficiently exceptional as to warrant fees. Defendant's arguments lack merit.

Defendant first argues that Plaintiff falsely represented to consumers that Plaintiff owned "the METAL trademark" as early as 2002, when the mark was in fact owned by Topolewski America, Inc. However, as set forth above, Topolewski (as a lay person and not an attorney) could have believed that to be true in 2002. Notably, Topolewski lacked any motive to intentionally make a false representation about this subject matter in 2002, long before the parties' dispute arose, which supports the conclusion that this was an innocent error. Thus, this is another

1  understandable mistake that Topolewski made in the past without any deceptive

2  intent, and therefore it should not be considered exceptional.

3       Moreover, the evidence relating to this argument is a single archived web

4  page from March 25, 2002.  Dkt. 145, Marcus Decl. Exh. 17.  There is, however, no

5  evidence in the record as to how long this representation remained on Plaintiff's

6  website, or if anyone was actually misled by representation.  Defendant also failed

7  to provide any arguments as to how it was harmed from this representation that

8  occurred in 2002.  Accordingly, this single representation was not exceptional as to

9  justify a fee award.

10      Defendant's other argument is that Plaintiff made representations to the

11  consuming public about how the products sold under the "METAL" mark were

12  "American made" when, according to Defendant, Plaintiff knew that the statement

13  was false.  Defendant's argument is specious at best based on the actual record

14  evidence.  Plaintiff did use the slogan "American made, American worn" in its

15  marketing materials.  Dkt. 145, Marcus Decl. Exh. 5 (11/19/18 Topolewski Dep. at

16  p. 248:3-21).  Plaintiff also marketed its products as follows: "Metal presents

17  American made hats, shirts and jeans for the true, defiant, well-strapping man, who

18  is better served burning it up on his hog, hammering away on his axe, getting fat air

19  on the slopes or dropping napalm on the enemy."  *Id.* at p. 250:1-11.  Significantly,

20  Plaintiff does make hats, shirts, and jeans in America, and the marketing materials

21  do not include any absolute statements or guarantees.  *See* Dkt. 145, Marcus Decl.

22  Exh. 20 at p. 5 (Interrogatory Response No. 8).  Thus, at a minimum, Plaintiff's use

23  of its slogan and marketing statements were not exceptionally misleading.

24      In addition, Defendant argues that Topolewski lied during his deposition

25  during the following exchange: "Q: Have Metal Jeans clothing products always

26  been made in the United States? A: Yes."  Defendant implies that Topolewski

27  testified that every single product ever sold by Plaintiff was made in the United

28  States.  But that goes beyond what was asked, and what Topolewski actually

JMBM | Jeffer Mangels
Butler & Mitchell LLP

testified to.  Plaintiff has always made some products in the United States, which is also consistent with Topolewski's (vague) testimony.  The parties obviously disagree about the scope of Topolewski's testimony, and Defendant can certainly try and impeach Topolewski using his prior deposition testimony, but this type of disagreement is common in litigation and does not amount to exceptional conduct that justifies an award of fees.

In sum, Defendant cannot show that any of Plaintiff's representations to the public were exceptional.

### 3. Plaintiff's Litigation Conduct Was Not Exceptional

#### a. Plaintiff Has Been Sufficiently Sanctioned For Its Litigation Conduct, And No Additional Fee Award Is Necessary

Defendant highlights three separate instances where Plaintiff was officially reprimanded by the Court for its litigation conduct.  In the first instance, the Court determined that Plaintiff's former counsel was unprepared for the parties' settlement conference, and sanctioned Plaintiff as a result.  Dkt. 96.  In the second instance, Plaintiff was sanctioned for improper deposition conduct by Plaintiff's former counsel.  Dkt. 132.  In the third instance, Plaintiff was held in contempt for failure to pay previously ordered sanctions.  Dkt. 183.

Of relevance to this Motion, the Court already awarded Defendant its attorneys' fees for the first two instances, and Defendant's attorneys' fees request for the third instance is pending.  Accordingly, Plaintiff respectfully submits that these instances of alleged litigation misconduct have either already been addressed by the Court, or can be addressed individually (for the pending fee motion relating to the contempt order).  There is no need for additional attorneys' fees to be awarded based on the same litigation conduct.

#### b. Other Litigation Conduct Highlighted By Defendant Is Not Exceptional

Defendant provides other instances of alleged litigation misconduct; yet, none

JMBM | Jeffer Mangels Butler & Mitchell LLP

1   of the alleged misconduct was exceptional.

2   *First*, Defendant alleges that Plaintiff failed to perform any pre-suit

3   investigations for this lawsuit.  However, Defendant lacks any evidence to

4   substantiate its claim.  At most, Defendant argues that Plaintiff's pre-suit

5   investigations were inadequate because Topolewski testified at his deposition that he

6   did not personally know that Defendant sold powerlifting gear.  But that argument

7   falls far short of establishing that Plaintiff and its counsel failed to perform any pre-

8   suit investigations in this action.  Indeed, Plaintiff knew that Defendant was selling

9   clothing using the METAL mark from the outset.  *See, e.g.*, Dkt. 1 at ¶ 3.  This alone

10  justified Plaintiff filing suit against Defendant in this action.  Defendant's argument

11  is further undermined by the Court's summary judgment order finding that triable

12  issues of fact remain with respect to whether Defendant's use of the stylized

13  METAL mark is likely to cause confusion with Plaintiff's METAL products.  Dkt.

14  193 at p. 7.  Plaintiff clearly had a basis for bringing this case, which help

15  demonstrate that this action was not exceptional.  *See Secalt S.A. v. Wuxi Shenxi*

16  *Constr. Machinery Co., Ltd.*, 668 F.3d 677, 687 (9th Cir. 2012) ("[A]n action is

17  exceptional under the Lanham Act if the plaintiff has no reasonable or legal basis to

18  believe in success on the merits.").

19  *Second*, Defendant argues that this case was exceptional because Plaintiff

20  continued to prosecute this case despite admitting Plaintiff was not aware of any lost

21  sales.  Defendant's argument, however, is meritless since Plaintiff's potential

22  damages are not limited to just lost profits.  For example, Plaintiff can seek

23  disgorgement damages without having to prove any lost sales.  Moreover, Plaintiff

24  also seeks an injunction in this matter to protect its goodwill, which justifies the

25  continued prosecution of this lawsuit.  *See Sand Hill Advisors, LLC v. Sand Hill*

26  *Advisors, LLC*, 2010 WL 8500520, at *4 (N.D. Cal. Sept. 20, 2010) (denying

27  defendant's motion for attorneys' fees because the plaintiff's reason for bringing the

28  action was to protect its goodwill, which was a "legitimate [reason]," and even

JMBM | Jeffer Mangels Butler & Mitchell LLP

though the court ultimately rejected the plaintiff's contentions, that did not mean the action was frivolous). Thus, it was not exceptional for Plaintiff to prosecute this case even without any evidence of lost sales.

*Third*, Defendant argues that this case was exceptional because Plaintiff failed to agree to a co-existence agreement. But it is entirely unclear why this is exceptional conduct, particularly in light of the Court's summary judgment order finding that triable issues of fact remain as to likelihood of confusion.

*Fourth*, Defendant argues that Plaintiff litigated this case in bad faith because it allegedly refused to stipulate to an extension of discovery at Defendant's request. Defendant points to other discovery disputes that parties had as well. Nonetheless, it is quite common for litigants to reject offers to extend discovery deadlines for the benefit of their adversary. Discovery disputes regarding a wide range of issues are also common during litigation. As such, this is not exceptional litigation conduct.

*Fifth*, Defendant argues that this case was exceptional because Plaintiff allegedly delayed prosecuting this case after the parties' 2013 lawsuit was dismissed. But there is nothing exceptional about a Plaintiff delaying the initiation of a lawsuit to finalize its pre-suit investigations, and to at least explore other alternatives to litigation.

*Finally*, Defendant argues that Plaintiff asserted numerous unsupported and incorrect legal theories in this case. However, the only example of this provided by Defendant relates to Plaintiff's argument that Defendant acted in bad faith by deleting goods and services from its trademark application to overcome a likelihood of confusion rejection with Plaintiff's METAL mark, but then continued to sell those goods including the mark. Here, Plaintiff's argument may not have been accepted by the Court, but that does not make it exceptional. *See, e.g.*, *In re Protegrity Corp.*, 2017 WL 747329, at *3 (N.D. Cal. Feb. 27, 2017) ("A losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith.") (internal quotes omitted). Further, Defendant

1  was informed by the USPTO that its sales of certain products would be likely to

2  cause confusion, but Defendant continued to sell those products with the METAL

3  marks anyway.  That is bad faith conduct that potentially gives rise to willful

4  infringement.  Thus, Plaintiff's argument was not frivolous.

5    In sum, Plaintiff has already been sufficiently sanctioned for some of its

6  litigation conduct, and Defendant cannot point to any other exceptional conduct by

7  Plaintiff.  Accordingly, the Motion should be denied in its entirety.

8  **D. Awarding Attorneys' Fees Is Not Necessary To Deter Conduct Or To Compensate Defendant**

9

10    Defendant claims that attorneys' fees should be awarded in this case to deter

11  others "who may be tempted to play fast and loose with the truth and trademark

12  rights."  As set forth above, however, Plaintiff did not obtain its trademark rights

13  through fraud.  Plaintiff applied to the USPTO for the 652 Registration, and Plaintiff

14  sold goods using the METAL mark in commerce, which gave rise to its trademark

15  rights.  Plaintiff's representations to the USPTO and the public were reasonable

16  under the circumstances.  As such, Defendant overstates the importance of this case,

17  and awarding Defendant its fees will have no deterrent effects on others.  Moreover,

18  Defendant used the METAL mark on goods that it knew would be covered by

19  Plaintiff's registered trademark.  As such, Defendant does not deserve to be

20  compensated for having to defend against a lawsuit it effectively invited through its

21  own actions.

22  **E. Defendant's Fee Request Is Unreasonable**

23    The Ninth Circuit has held that "[i]n determining reasonable hours, counsel

24  bears the burden of submitting detailed time records justifying the hours claimed to

25  have been expended."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th

26  Cir. 1986).  "Where the documentation of hours is inadequate, the district court may

27  reduce the award accordingly."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A

28  district court should also exclude from the fee calculation any hours that were not

JMBM | Jeffer Mangels Butler & Mitchell LLP

"reasonably expended," such as hours that are excessive, redundant, or otherwise
unnecessary." *Id*. at 433-34.

Defendant's request for $537,566.00 for attorneys' fees is unreasonable for
several reasons:

*First*, Defendant leaves the burden to Plaintiff and the Court to determine
whether the amount sought includes attorneys' fees that were unnecessary or were
not reasonably expended.  Defendant provides a summary of fees to the Court that
includes fees totals covering various blocks of time. *See* Dkt. 209 at ¶ 21.
However, the blocks of time appear to be randomly selected, and multiple tasks
performed within those blocks of time are combined together without any further
explanation.  By summarizing fees in this manner, it is virtually impossible to tell
how much in fees Defendant is seeking for the different types of tasks performed.
For example, according to its summary, Defendant performed work associated with
the summary judgment motion from August 29, 2018 to June 30, 2019. *Id*.  But it is
impossible to tell how much of the $336,233.00 billed during that time period
actually relates to Defendant's work on that motion.  Thus, Plaintiff cannot assess
whether Defendant's fees were necessary or reasonable.

*Second*, even a quick spot check of Defendant's billing records reveals
multiple inefficiencies.  For example, on April 30, 2019, Christina Sauerborn spent
exactly 8.0 hours "[p]repar[ing] materials for oral hearing on May 6, 2019." *See*
Sealed Declaration of Yuval H. Marcus, Exh. B at 38.  But it is entirely unclear why
it took that long to prepare materials for the upcoming hearing, what those materials
were, and why a paralegal could not have performed that work.  On that same day,
Natania Buchbinder, who is a paralegal, spent 3.3 hours "[r]eview[ing] documents
in preparation for hearing." *Id*.  But it is again unclear why a paralegal needed to
prepare for the hearing at all, especially when Yuval Marcus was already preparing
for oral argument on that same day. *Id*.  As another example, on March 12, 2019,
Yuval Marcus billed 1.0 hours in order to, among other things, arrange for payment

1   of travel costs, while Lori Cooper billed 1.1 hours to, among other things, prepare

2   mailing of check to Jahrmarkt.  *Id*. at 34.  Based on the way counsel's practice of

3   block billing their time, it is impossible to tell how much time counsel billed on

4   these menial tasks.  This applies to Defendant's other time entries as well.

5        A detailed analysis of Defendant's invoices would likely show additional

6   inefficiencies and a request for fees that were not necessary or reasonably expended.

7   It is Defendant's burden to prove the reasonableness of the fees sought, not

8   Plaintiff's burden, and not the Court's burden.  Because Defendant failed to meet

9   this burden, this Court may deny fees entirely on this basis, *see, e.g., Watts v. United*

10  *States*, 1993 U.S. App. LEXIS 24955, at *3 (9th Cir. 1993) (affirming complete

11  denial of attorneys' fees), or apply a significant reduction to Gilead's requested fee

12  amount.  *Hensley*, 461 U.S. at 433; *see also Saint-Gobain Autover USA, Inc. v. Xinyi*

13  *Glass N. Am., Inc*. 707 F. Supp. 2d 737, 762-65 (N.D. Ohio 2010) (holding that

14  monthly hourly total, accompanied by summary of tasks, was insufficient

15  documentation, and adopting a 50% reduction); *Codex Corp. v. Milgo Elec. Corp.*,

16  541 F. Supp. 1198, 1205 (D. Mass. 1982) (adopting a 50% reduction).

17       *Third*, Defendant previously sought and received attorneys' fees in this

18  lawsuit on two separate occasions.  In both instances, Defendant's requested fees

19  were reduced by the Court.  Nonetheless, through its Motion, Defendant now seeks

20  to recover the fees that the Court previously declined to award.  *See* Dkt. 209 at ¶¶

21  30-32.  Defendant's request for those fees amounts to nothing more than an

22  untimely motion for reconsideration, which should be denied.  *See Selectron Indus.*

23  *Co. v. Selectron Int'l*, 2007 WL 5193735, at *3 (C.D. Cal. Sept. 25, 2007) (denying

24  motion for reconsideration as untimely due to four month delay in filing).

25       *Fourth*, Defendant failed to adequately support that its requested rates,

26  including the rates for its paralegals, was reasonable.  Accordingly, those rates

27  should be reduced if any fees are awarded in this case.

28       *Lastly*, Defendant seeks fees based on Plaintiff's alleged litigation

JMBM | Jeffer Mangels Butler & Mitchell LLP

misconduct.  However, a finding of exceptionality based on litigation misconduct usually does not support a full award of attorneys' fees.  *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553-54 (Fed. Cir. 1989).  Instead, the fee award "must bear some relation to the extent of the misconduct," and compensate a party for the "*extra* legal effort to counteract the [] misconduct."  *Id*. at 1553 (emphasis in original).  Defendant failed to address what fees should be awarded if exceptionality is based on litigation misconduct.  Accordingly, the Court should either deny Defendant's fees or reduce them if fees are awarded from a finding of exceptionality based on litigation misconduct.

Plaintiff reserves all other objections to the time entries and amount requested in the event the Court grants all or part of the Motion.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety.  In the alternative, the Court should defer ruling on this motion while the Ninth Circuit appeal is pending, or deny it without prejudice such that Defendant can renew its Motion following resolution of the appeal.

DATED:  December 2, 2019

JEFFER MANGELS BUTLER & MITCHELL LLP
Stanley M. Gibson
Rex Hwang
Lauren Babst

By:      */s/ Lauren Babst*
         LAUREN BABST
Attorneys for Plaintiff Metal Jeans, Inc.